The opinion of the Court was delivered by
Frost, J.
These cases are the sequel of a long protracted contest, in which Robertson, and Gilfillin his former copartner, endeavored to wrest from their debtor, Shannon, a sum of money which they alleged he possessed: and to which Shannon clung with obstinate pertinacity. There was evidence sufficient at least, to justify the belief of Robertson and Gilfillin, that Shannon did possess such means of satisfying their just demand, and to excuse their resentment at his perverse resolution that the money should never be applied to that purpose. But the merits of Robertson’s complaint are not involved in this issue: and this allusion is made to the subject, only to remove any impression of prejudice against his cause, in the minds of the Court.
The controlling question submitted by the appeal is, whether the plaintiffs can maintain their actions, at common law; which the defendant controverts in his first ground. If the plaintiffs cannot maintain their actions at common law, the defendant, by his second ground, denies that the declarations are sufficient to maintain the actions, under the Sheriffs’ Act of 1839.
The 30th section of this Act provides that, “ where any person shall be taken, on mesne or final process, in any civil suit, and from inability to pay the demand, debt or damages, or find bail, if (is) committed to jail; and if such person has no lands, tenements, goods, chattels or choses in action, whereby his main *238 tenance in jail can be defrayed, the plaintiff or person, at whose instance, such party shall be imprisoned, shall pay and satisfy the same : and if such person, or his attorney shall refuse or neglect, after ten days notice, to pay or give security to pay the same, when demanded, the sheriff or jailor in whose custody such prisoner is, may discharge him from such confinement: provided,” &c.
It is a well settled rule of pleading that, where a statute gives a new action, the plaintiff must aver and prove everything which, by the statute, is necessary to entitle him to an action. Com. Dig. Action on Case, A, 3. We are informed, from the argument, that the declarations aver that Shannon had “ no visible means,” whereby his maintenance in jail might be defrayed. Now although, if the necessary matter be stated, in substance and effect, that is sufficient, and the precise words of the statute need not be used, (1 Chit. PL 372 ; 3 Wils. 318,) yet the averment of “ no visible means” does not fulfil this condition. The terms are vague and equivocal. They may mean - property beyond the plaintiff’s vision, as well as property, not the object of that sense. By “visible means” is commonly understood, properly in possession, as distinguished from choses in action, such as stocks, bonds or other securities for money. In this, which is the common and popular meaning, the prisoner may not have “ any visible moans,” and yet have “ chattels or choses in action, whereby his maintenance in jail, may be defrayed.” And so the averment in the declarations does not state, in substance and effect, the matter required by the statute to give an action to the plaintiff.
But where an action is sustainable, at common law, and an action is also given by statute, without taking away the common law right, an action may be maintained at common law, as well as upon the statute. This brings us to the question, whether the plaintiffs can maintain their actions, at common law?
It is affirmed for the defence, that, by the common law of England, neither the plaintiff nor the sheriff is bound to maintain a prisoner on civil process : but that he must support him *239 self in jail. The leading, if not the only authority for this position, is the case of Dive vs. Manningham, Plowd. 68: in which C. J. Montague, in argument, says, “ if one be in execution, he ought to live of his own. Neither the plaintiff nor the sheriff is bound to give him meat or drink: no more than, if one distrains cattle and puts them in a pound. No more is the plaintiff or sheriff bound to give meat to the prisoner: and this by the course of the common law: but he ought to live of his own: and if he have no goods of his own, he shall live by the charity of others: and if others will give him nothing, let him die, in the name of God, if he will, and impute the cause of it to his own fault: for his presumption and ill behaviour brought him to that confinement.” In 12 Mod., Holt, C. J., also affirms that the sheriff is not bound to maintain his prisoner. He does not say, by the common law.
On the contrary we have the authority of Lord Coke, Co. Lit. 295 a, that a jailor cannot refuse victuals to his prisoner; and ought not to suffer him to die for want of sustenance. The same is, in effect, repeated in Pinchón’s case, 9 Rep. 87. Lord Coke is, at least, a counterpoise to the authorities against him.
It is a matter of surprise that it should be affirmed the jailor is not bound, at common law, to provide for a prisoner, under civil process, when, at common law, a debtor was not subject to arrest either on mesne or final process. The learning on this subject will be found in 3 Black. Com., Tit. Process. A defendant, except for forcible injuries, could be brought into Court, only by summons and attachment: and, if he held out against these, by distringas, whereby his goods and the profits of his land were seized and forfeited to the king. “ And here,” says Blackstone, “ by the common, as well as the civil law, the process ended, in cases of injury without force: the defendant, if he had anything, being gradually stript of it all by repeated distresses, till he rendered obedience to the king’s writ: And if he had no substance, the law held him incapable of making satisfaction : and therefore looked upon all other process as nugatory.” It was only for injuries with force, which involved a *240 breach of the peace and liability to a fine to the king, that the defendant was subjected to a capias ad respondendum. By several statutes, the last of which was the 19 Henry VIL, c. 9, that process, by degrees, was extended to all actions.
By referring to Bacon’s Abr. Tit. Execution, it will be found, that the writ of capias ad satisfaciendum was' allowed by the common law, only in case of the king : who, by his prerogative, might have execution of the body, goods and lands of his debtor. This process was, first, extended, by the Stat. 13 Ed. I., c. 11; by which it was enacted, that servants, bailiffs and others bound to account, and who might be found in arrear, should be arrested by their bodies and kept by the sheriff or jailor, in ferris, et in bona custodia, at their own expense, until the arrears were satisfied. By subsequent statutes, this writ of execution was granted in other actions, until lastly, by the statute of Henry VII. before cited, it was allowed in all actions on the case. Gilbert (Executions 76, 7) says, he is not aware there is any trace of this writ in our early writers; and it would seem not improbable that the course of proceeding was, upon the prayer of the plaintiff, to detain the defendant in execution, under the capias pro fine, until he had satisfied the plaintiff for the damage : the king, for the benefit of the plaintiff, refusing to take his fine for the breach of the peace, until the plaintiff had been satisfied for his damages.
The rule that neither the plaintiff nor the jailor is bound to maintain a prisoner, on civil process, does seem to prevail in the English courts : but it is clear it is not derived from the common law : and could not have been imported into this State, as a part of the common law. This is sufficient for our present purpose: and it would be more curious than profitable to inquire into its origin.
But even if the doctrine in Dive vs. Manningham was the common law of England, it never was of this State. It is a mistake to suppose that the entire body of the common law was imported by the first settlers. On this subject, Blackstone says, 1 Com. 63, “ Colonists carry with them so much of the common *241 law as is applicable to their own situation and the condition of an infant colony: such, for instance, as the general laws of inheritance and of protection from personal injuries. The artificial refinements and distinctions, incident to the policy of a great and commercial people, and the laws of police and revenue, (such, especially, as are enforced by penalties,) the mode of maintenance for the established clergy, and the jurisdiction of the spiritual courts, and a multitude of other provisions, are neither necessary nor convenient for them: and are, therefore, not in force. What shall be admitted and what rejected, at what times and under what restrictions, must, in case of dispute, be decided in the first instance by their own provincial judicatures, subject to the control of the king in council.”
The first impression of horror, which is created by the announcement of C. J. Montague’s law, is in some measure relieved by the consideration, that its cruelty, in practice, was obviated by the private benevolence of a great metropolis ; by the ample foundations of charity in an ancient and wealthy community, and by the ample revenues and systematic alms of the church. But the poor adventurers who came to seek their fortunes in the wilderness of Carolina, were too intensely occupied in the struggle against famine and a savage foe, to spare the time and the means for visiting and relieving the wants of prisoners. Liberty was more prized than money : and the labor and prowess of every man, in providing for the common subsistence and security, were more indispensable than the protection of credit.
In the condition of the colony, such a law must have inflicted painful suffering, even if the insolvent debtor was spared the doom, so blasphemously denounced against him. The law would be a reproach to any people. If intended for the punishment of the debtor, it is shockingly cruel; and equally unjust, for it does not discriminate between the innocent and the guilty, the unfortunate and the vicious. As a measure of coercion it is not less reprehensible. Such a law was repugnant to the char *242 acter of the people and the civilization of the period when the colony was settled: and therefore was not adopted.
It is a remarkable fact, and confirms this conclusion, that, for more than sixty years after the first settlement, there was no jail in the province. The Act of 1731, reciting ..that the provost marshal had, for many years, taken the emoluments of sheriff or jailer without any legal responsibility, declares thatfor anymisfeasance or default in the keeping of prisoners, he should be subject to the fines and penalties which are imposed by the English law: and enacts that the house of the provost marshal, or any other place he may publicly use for the keeping of prisoners, shall be deemed the provincial jail, until a public or provincial jail shall be built: and that the provost marshal may exercise all the powers and authority of sheriffs or jailers in England, in the ordering and keeping of the jail and the prevention of escapes, “ so far as the same are agreeable to the laws, usages and customs of this province.”
An examination of our decided cases will prove that the law of Dive vs. Manningham has never received the sanction of our Courts, but, on the contrary, has been repudiated. The case of McClain vs. Hayne, 1 Tread. 212, which is the leading authority cited in its support, shews the recognition of it by only two Judges (Bay and Brevard) out of a Court of six — Judge Nott making an energetic protest against any such doctrine. The Sheriff vs. Taylor, 2 Brev. 482, only decided that a jailer’s charges for maintenance of prisoners are not such fees, for which the clerk may issue execution, on the taxation of costs under the Act of 1791. In Love vs. Lowry, 1 McC. 180, the sheriff sued, under the Act of 1817, the plaintiff in execution for the board in jail of an insolvent debtor, and it was decided that the process was defective in not sufficiently setting out what was required by the statute to give him an action. Schroter vs. Crawford, 1 Hill, 422, only decided that when the sheriff collects money on execution for a prisoner in execution, the plaintiff, at whose suit the prisoner is arrested, could not demand it, *243 having lost his lien ; and that the sheriff could not retain it— for though the sheriff might have a claim against the prisoner for his maintenance, it was founded in contract, and could be recovered only by suit. These cases are all which have been or can be cited in support of the common law obligation of a prisoner in execution to maintain himself.
The first case to the contrary is Moore vs. Benbow, (1 Tread. 449,) decided the year after McClain vs. Hayne. The liability of the plaintiff to the sheriff for the maintenance of his prisoner, was the only question made in the case. It was held by Smith, Colcock and Nott, Justices, that “ the creditor is bound, by his implied contract with the jailer, to see him paid for the support of the debtor, on the ground that it is a claim founded on equity and good conscience: and which the creditor is bound to pay.” Bay, Brevard and Grimke, Justices, adhered to McClain vs. Hayne. Caldwell vs. Boyd, (2 N. and McC. 377,) is the next case. Gantt, J., who delivered the opinion of the Court, rests the decision solely on the ground “ that the prisoner is to be supported : and the expense must, and ought to fall on the person for whose benefit the party was deprived of his liberty.” Richardson, Colcock, Nott and Huger, Justices, concurred.
By these cases the supposed common law rule is rejected ; and they are in harmony with the legislation, on the subject. By the 20th section of the Insolvent Debtors’ Act,(a) when the defendant is admitted to its benefits, the plaintiff is declared liable to pay the sheriff’s fees for his maintenance. The assignees are directed to refund the plaintiff from the assigned effects, if they are sufficient. By the 13th section of the same Act, (b) if the defendant is remanded to jail by the Judge’s order, on suspicion that he has not rendered a fair schedule of his property, the creditors at whose instance he may be remanded, are required to pay the provost Marshall 6s. 3d. per diem, for his subsistence ; and if they neglect to pay the same, for the space of one week, the provost Marshall shall immediately discharge the prisoner. By the 34th section of the County Court Act,(c) if a *244 prisoner in execution has been detained for the space of twenty-days, the sheriff of the county shall have the right to security (if required) for his maintenance, from the plaintiff or his attorney: and if it is not given, the prisoner shall be discharged. This section, in terms, applies to the county sheriffs and jails. The 30th section(a) relates to the discharge of insolvent debtors. It could not be intended to apply to county sheriffs and jails, which had been fully provided for in the 34th section : and as a general enactment, was not repealed with the County Court Act. The 30th section of the sheriff’s Act of 1839,(b) which has been cited in the first part of this opinion, is almost a literal transcript of the 39th section of the County Court Act. The Act of 1817, 6 Stat. 66, made the assignees of the prisoner liable, in the first instance ; and if they had not sufficient, made the plaintiff liable, by a special action on the case. If the prisoner neglected or refused to surrender his effects, the sheriff was declared not liable to provide for his subsistence, unless his fees were tendered to the sheriff at the end of every week. These provisions are superseded by the Act of 1839.
It cannot be inferred, because these enactments declare the liability of the plaintiff to provide for his prisoner, that such liability did not exist at common law. The several Acts modify or regulate the plaintiff’s liability, and do not 'simply enact it. The liability of the defendant, ultimately, for his own support is recognized; reimbursement of the plaintiff from the defendant’s assets is provided for: and the sheriff is protected against loss by authority given to him to discharge the prisoner, if upon notice, and within a limited time, the plaintiff, or his attorney, does not pay, or give the sheriff security for the payment of the prisoner’s subsistence.
The common law liability of the sheriff may be tested by a supposed case. If the sheriff had, at any period of the history of this State, locked up a prisoner on bail process or execution, as by law he might do, and then neglected to provide him meat and drink, so that he died of starvation, can it be doubted that, *245 on an indictment for murder, the case of Dive vs. Manning-ham would have availed nothing for his acquittal. Unless it be affirmed that so barbarous a murder could be justified, Dive vs. Manningham never was recognized, as law.
It has been shown from the adjudged cases, that, by the common law of this State, the sheriff is bound to support his prisoner under civil process, and that the plaintiff is bound ex contractu., to repay to the sheriff his expenses : and that these cases conform to the whole course of legislation on the subject.
The ground of the plaintiff’s liability is, that the prisoner is confined for the benefit of the plaintiff, by whose order he is committed to prison, and who alone has the power to discharge him: that it is the duty of the sheriff to receive, keep and provide for the prisoner’s subsistence, which is more than equivalent to the plaintiff’s special instance and request. Ex equo et bono, the plaintiff is bound to repay the sheriff for the work and labor done and money expended for his benefit. The plaintiffs have, for many years, kept Shannon a prisoner, and expended hundreds of dollars for the use of the defendant in his fruitless endeavor, by rigorous and protracted imprisonment, to compel Shannon to pay his debt. By the plainest principles of justice the defendant is bound to recompense them for services rendered, risks incurred and money expended by his order and for his benefit.
The liability, thus enforced by a common law action, does not practically differ from the remedy given by the Act of 1839. In Robinson & Caldwell vs. Simpson, it was held, that the Act of 1839 being intended for the relief of the sheriff, the condition, if the prisoner “ has no lands, &c. whereby his maintenance in jail may be defrayed,” must be construed to mean any such lands, &c. as the sheriff can make available. So that, if the prisoner has lands and effects in a foreign jurisdiction, or otherwise so situated, disposed of or concealed, that the sheriff cannot make them available for the payment of his demand, the plaintiff is liable to the sheriff. Consistently with the design of the Act, no other construction can be given to that condition: *246 for it may safely be assumed in every case, that, if the plaintiff cannot by his execution of fi. fa., and the actual imprisonment of his debtor tinder a ca. sa., make any property or effects of the prisoner available for the satisfaction of his debt, the sheriff cannot be more successful for the payment of his simple contract demand. It cannot be supposed that a debtor, who may have effects which the plaintiff cannot reach, and which he will not surrender for the payment of the plaintiff’s debt, will voluntarily advance to the sheriff the expenses of his support, in relief of the liability of his exacting creditor, and thereby prolong his own imprisonment. It is a vain objection to this construction of the Act of 1839, that, thereby, the prisoner will be encouraged and supported in his dishonest purpose of retaining his property from the payment of his debts. The plaintiff or the sheriff must pay his expenses : and it is difficult to perceive how the prisoner’s support by the sheriff can encourage his obstinacy, any more than his support by the plaintiff. The prisoner must be wholly indifferent between the plaintiff and the sheriff, which shall pay his expenses.
When it is held that the plaintiffs may maintain their actions at common law, all the defendant’s grounds of appeal are disposed of: except the third ground in arrest of judgment, that, in Shingler’s case, the declaration alleges the custody and maintenance of the prisoner under bail process instead of execution. The liability of the plaintiff is the same under either. At common law it is sufficient to aver that the defendant is indebted to the plaintiff for the maintenance of a prisoner, at his suit. The averment of a circumstance which is wholly immaterial to the plaintiff’s recovery, and mere surplusage, cannot prevail in arrest of judgment, nor the neglect to prove it be a ground of non-suit.
The motion is dismissed.
O’Neall, Wardlaw, Withers, Whitker and Glover, JX, concurred.

Motion, dismissed.

 4 Stat. 94.

6) lb. 92.

 7 Stat. 226.

 lb. 230.

6) II Stat. 31.